**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| WESTCHESTER COUNTY, NY | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. _____ |
| | ) | |
| MYLAN PHARMACEUTICALS, INC.; | ) | |
| SANDOZ, INC.; WEST-WARD | ) | Removed from Supreme Court of the |
| PHARMACEUTICALS CORP. N/K/A HIKMA | ) | State of New York, County of |
| PHARMACEUTICALS, INC.; AMNEAL | ) | Westchester: Westchester County, NY v. |
| PHARMACEUTICALS, INC.; KVK-TECH, INC.; | ) | Purdue Pharma L.P., et al., |
| INDIVIOR INC. F/K/A RECKITT BENCKISER | ) | No. 75020/2022 |
| PHARMACEUTICALS, INC.; ASSERTIO | ) | |
| THERAPEUTICS F/K/A DEPOMED, INC.; | | |
| ABBOTT LABORATORIES, INC.; SUN | | |
| PHARMACEUTICAL INDUSTRIES, INC.; | | |
| ZYDUS PHARMACEUTICALS (USA) INC.; | | |
| NOVARTIS AG A/K/A NOVARTIS INC.; | | |
| NOVARTIS PHARMACEUTICALS | | |
| CORPORATION; HENRY SCHEIN, INC.; | | |
| HENRY SCHEIN MEDICAL SYSTEMS, INC.; | | |
| KONINKLIJKE AHOLD DELHAIZE N.V.; | | |
| AHOLD DELHAIZE USA, INC.; AMERICAN | | |
| SALES COMPANY, LLC; ASSOCIATED | | |
| PHARMACIES, INC.; COSTCO WHOLESALE | | |
| CORPORATION; TARGET CORPORATION; | | |
| WEGMANS FOOD MARKETS, INC.; KPH | | |
| HEALTHCARE SERVICES, INC. D/B/A | | |
| KINNEY DRUGS; KINNEY DRUGS; THE STOP | | |
| & SHOP SUPERMARKET COMPANY LLC | | |
| D/B/A STOP & SHOP PHARMACY; EXPRESS | | |
| SCRIPTS HOLDING COMPANY; EXPRESS | | |
| SCRIPTS, INC.; UNITEDHEALTH GROUP | | |
| INCORPORATED; MEDCO HEALTH | | |
| SOLUTIONS, INC.; MERCK-MEDCO; OPTUM, | | |
| INC.; OPTUMRX INC.; NAVITUS HOLDINGS, | | |
| LLC; NAVITUS HEALTH SOLUTIONS, LLC | | |
| | | |
| Defendants. | | |

1

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1442(a) and 1446, OptumRx, Inc. ("OptumRx") hereby removes *Westchester County, NY v. Purdue Pharma L.P., et al*., (Case No. 75020/2022) from the Supreme Court of the State of New York, County of Westchester to the United States District Court for the Southern District of New York.[1]  Removal is proper under 28 U.S.C. § 1442(a), the federal-officer removal statute, and timely under 28 U.S.C. § 1446(b)(3).

## I.      INTRODUCTION

1.      OptumRx is a contractor with the federal government. OptumRx contracts with federal agencies and entities to provide pharmacy benefit management services across the country, including to federal Veterans Health Administration (VHA) health-plan members in Westchester County, New York. Plaintiff challenges conduct under that federal contract, so this case  is properly removed to federal court.

2.      In this case, Plaintiff Westchester County, New York alleges that OptumRx violated the law by offering its health-plan clients formularies (lists of drugs) that did not properly restrict opioids.[2]  Under OptumRx's contract with the VHA, OptumRx provided services subject to the federal government's guidance and control, under detailed contractual requirements that in

---

[1] A notice of removal must contain only "'a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.*

[2] As courts across the country have recognized, PBMs do not make formulary or health-plan decisions for their clients. *See, e.g.*, *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 467 (7th Cir. 2007) (the client, not its PBM, "possessed the sole authority to control and administer the [health] plan"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio July 15, 2019), Dkt. No. 1848, at 2 ("The Court understands that . . . plan sponsor[] [clients] decide whether to adopt the programs that the PBM Defendants offer.").

some ways did not allow OptumRx to direct, change, or formulate policy in connection with the federal plan.

3.     In short, Plaintiff challenges opioid prescriptions adjudicated or processed under federal contracts like the VHA contract.

4.     But for prescriptions adjudicated or processed under its federal contracts, OptumRx had no choice but to ensure compliance with the precise specifications directed by the federal government.

5.     Plaintiff's claims necessarily implicate OptumRx's performance at the direction of federal government entities. For that reason and the reasons set forth below, the federal-officer removal statute (28 U.S.C. § 1442(a)) entitles OptumRx to remove the case to federal court.

## II.     BACKGROUND

6.     Plaintiff sued various entities, including OptumRx, to recoup the "increased cost and spending" that Plaintiff claims it has expended to "combat the opioid epidemic." Amended Supplemental Short Form Complaint ("ASSFC") at ¶ 29. The defendants in this case include opioid manufacturers, distributors, pharmacies, and pharmacy benefit managers (PBMs).

7.     Unlike other participants in the pharmaceutical supply chain, PBMs do not manufacture, market, advertise, prescribe, or supply prescription opioids or other medications. PBMs are private businesses that enter into service agreements with their clients to administer their clients' prescription-drug benefits and to process prescription claims for FDA-approved medications. *See* ASSFC ¶¶ 39, 44. PBM clients include federal and state government agencies, Medicare Plan D sponsors, employers, unions, trusts, and other health-plan sponsors who contract with PBMs to provide pharmacy benefits to their employees or members.

8.     On April 7, 2023, Plaintiff filed its Amended Supplemental Short Form Complaint,

which named OptumRx, Inc., among others, as a defendant to this lawsuit.

9.      In its Amended Supplemental Short Form Complaint, Plaintiff's allegations against OptumRx and other so-called "PBM Defendants" focus on formulary design. Plaintiff alleges that PBMs contributed to the increase in prescription opioid use and abuse by acting as "gatekeepers to the vast majority of opioid prescriptions filled in the United States." ASSFC ¶ 48. Plaintiff contends that PBMs contributed to the opioid epidemic by "control[ling] drug formularies which set the criteria and terms under which pharmaceutical drugs are reimbursed," and in this way, "controlling prescription drug utilization overall." *Id.*

10.     As Plaintiff acknowledges, written contracts govern the PBMs' relationships with their clients. *Id.* ¶¶ 54, 145, 160, 167.  Those contracts confirm that PBMs do not control their clients' formularies.  Yet in the Amended Supplemental Short Form Complaint, Plaintiff makes broad, sweeping allegations about the PBM Defendants' purported role in contributing to an oversupply of opioids, alleging that the PBM Defendants controlled the flow of opioids by deciding to place opioids on the formulary products offered to their clients.  *See id.* ¶ 472 ("[PBMs] influence which drug products are used most frequently and set prices for pharmacies.").

11.     Despite those sweeping allegations, Plaintiff did not in the Amended Supplemental Short Form Complaint identify the specific formularies, prescriptions, or health plans at issue in this case.

12.     The Amended Supplemental Short Form Complaint establishes that Plaintiff is relying on federal plan formularies and prescription claims that OptumRx adjudicated or processed, including claims adjudicated or processed for plans controlled or sponsored by federal government agencies and entities.

13.     The federal government entities that control or sponsor health plans impose

requirements and exercise oversight over the PBM Defendants' work regarding formulary design, and Plaintiff challenges those PBM practices. *See, e.g.*, *id.* ¶ 145 (alleging that in return for offering PBM services, "PBMs earn revenue from at least the following sources: fees from health plans and insurers…")

### III.   GROUNDS FOR FEDERAL OFFICER REMOVAL

14.   The federal officer removal statute permits any person to remove a case to federal court if the person is "acting under" a federal officer and is sued "for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).

15.   The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969)). Accordingly, "in contrast to most questions of federal jurisdiction, federal officer removal must be liberally construed." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (internal quotation marks omitted); *see also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147, (2007); *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250–51 (4th Cir. 2021) (upholding PBM Express Scripts' removal of similar opioid-related claims based on Express Scripts' contract with the Department of Defense).

16.   In the Second Circuit, "[t]o invoke the [federal-officer-removal] statute, a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable federal defense.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (holding that district court properly found that it had jurisdiction under the federal officer removal statute and affirming denial

of motion to remand).  OptumRx satisfies all three elements.

### A.      OptumRx is a "person" within the Federal Officer Removal Statute.

17.     OptumRx is a "person" under the federal officer removal statute because "corporate persons qualify as 'persons' under § 1442."  *Isaacson*, 517 F.3d at 135; *see also Watson*, 551 U.S. at 152–53 (interchangeably discussing a "private person" and "company" when analyzing the relevant relationship under the federal officer removal statute).

### B.      OptumRx acted "under color of federal office."

18.     Private entities are "acting under" a federal officer when involved in an effort to *assist* or help *carry out* the duties or tasks of the federal superior."  *Isaacson*, 517 F.3d at 137. Government contractors fall within the terms of the federal officer removal statute when the relationship between the contractor and the government is an unusually close one involving detailed regulation, monitoring, or supervision. *Id*.

19.     OptumRx has "acted under" the direction of a federal officer in providing PBM services to federal health plans, including the Veterans Health Administration.

### 1.      OptumRx "acts under" the direction of a federal officer in performing its contracts with the Veterans Health Administration.

20.     The U.S. Department of Veteran Affairs is a federal executive department. 38 U.S.C. § 301; *see also Vasquez v. Ayudando Guardians, Inc.*, No. CV 16-00821, 2018 U.S. Dist. LEXIS 25068, at *5 (D.N.M. Feb. 15, 2018) (holding that a *Bivens* claim against the VA was barred by sovereign immunity as a claim against "the United States and its agencies."). The U.S. Department of Veteran Affairs, through the Veterans Health Administration (VHA), operates the largest integrated health care system in the United States, providing health care services to millions of veterans each year at 1,233 health care facilities, 168 medical centers, and 1,053 outpatient clinics.

21.     From 2009 through today, the VHA has hired OptumRx to provide pharmacy benefit management services. OptumRx serves as a third-party administrator, providing PBM services to assist the VHA in providing health care services to millions of veterans, their dependents, and their beneficiaries each year—including members in Westchester County, New York. *See* 38 U.S.C. § 301. OptumRx provides PBM services to the VHA under the detailed requirements of its contract and lengthy Performance Work Statement (the VHA contract).

22.     The relationship between OptumRx and the VHA is an unusually close one involving detailed regulation, monitoring, and supervision. The VHA dictates nearly every aspect of its relationship with OptumRx.

23.     ***Complete Control Over Formulary Construction.*** The VHA has its own Pharmacy & Therapeutics Committee (P&T Committee)[3] and constructs its own formulary. OptumRx does not decide what prescription drugs are covered or not covered on the VHA's formulary, nor does OptumRx make recommendations regarding formulary design.

24.     ***Complete Control Over Claims Processing***. The VHA maintains complete control of claim adjudication and pricing logic.

25.     ***Daily Communication.*** The VHA Contract requires weekly communication between the VHA OCC, Contractor, and other appropriate parties. The VHA and an OptumRx representative communicate nearly every day and meet in person quarterly.

26.     ***Appointment of Contracting Officer Technical Representative.*** The VHA appoints a Contracting Officer Technical Representative in connection with its contract with

---

[3] A P&T Committee typically is comprised of independent physicians and pharmacists who evaluate existing and emerging drugs based on scientific evidence, and review and appraise those drugs in an unbiased and evidence-based way. PBM clients may elect to use the PBM's internal P&T Committee or the client may operate its own P&T Committee, as the VHA does.

7

OptumRx. The Contracting Officer Technical Representative is responsible for (i) monitoring contract performance and immediately reporting all problems related to it to the Contracting Officer, (ii) establishing, and providing to the Contracting Officer, a surveillance plan that will ensure receipt of the quantity and kinds of supplies or services required by the contract, (iii) ensuring that the Contractor complies with the defined Statement of Work or specifications included in the contract, and (iv) assisting the Contractor and Contracting Officer in interpreting technical requirements of the contract scope of work or specifications and submitting any differences of opinion on these matters to the Contracting Officer for resolution.

27.     ***Inspections.*** The VHA subjects OptumRx to inspections to evaluate outcomes on a periodic basis.

28.     ***Payment from the U.S. Treasury.*** The U.S. Treasury pays OptumRx directly for the PBM services that OptumRx supplies to the VHA.

29.     OptumRx carries out functions that the VHA would otherwise have to provide itself under a contract that provides for unusually close oversight, involving detailed regulation, monitoring, and supervision from the VHA. OptumRx thus is "acting under" a federal officer when providing PBM services for the VHA. *Isaacson*, 517 F.3d at 137 (defendant "acting under" a federal officer and federal officer removal appropriate where defendants "contracted with the Government to provide a product that. . . , in the absence of Defendants, the Government would have had to produce itself").

30.     Inasmuch as Plaintiff's claims involve OptumRx's provision of pharmacy-care services for federal plans like those offered by the Veterans Health Administration, Plaintiff focuses on formulary design—that is, the placement and treatment of opioids on formularies for these plans. *See, e.g.*, ASSFC ¶ 496–97. But in administering the formulary design for these federal

and plans, OptumRx at all times acted at the direction of the federal government and in accordance with a written contract with a federal entity.

31.     The VHA constructs its own formulary and prior-authorization criteria. OptumRx is not entitled to direct, change, or engage in the formulation of VHA policy. OptumRx adjudicates prescription opioid claims for the VHA in accordance with the VHA's formulary and pricing logic.

32.     As it relates to the VHA plan, OptumRx administers every aspect of the VHA's pharmacy care services according to the direct or delegated authority of a federal officer. OptumRx's formulary development and management—which Plaintiff challenges in this action— are causally connected to official federal authority.

> **C.     OptumRx has colorable federal defenses to the County's claims.**

33.     Second Circuit law holds that "[t]o be 'colorable,' the defense need not be 'clearly sustainable'." *Isaacson*, 517 F.3d at 139. "One of the primary purposes of the removal statute—as its history clearly demonstrates—*was to have such defenses litigated in the federal courts*." *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969); *see id*. at 407 ("The officer need not win his case before he can have it removed."). "[U]nless the substantive defense raised by the federal officer is completely frivolous, he is entitled to have the merits of such defense decided in a federal court." *Williams v. Brantley*, 492 F. Supp. 925, 927–28 (W.D.N.Y. 1980), *aff'd*, 738 F.2d 419 (2d Cir. 1984); *see also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute ... [w]e therefore do not require the officer virtually to 'win his case before he can have it removed.'").

34.     Here, OptumRx has several available federal defenses, including a government-contractor immunity defense.

35.     Under a traditional tort liability formulation, the federal government contractor defense applies when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). While the test as typically expressed focuses on military equipment, "it is at least plausible that the government contractor defense could apply outside the military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010).

36.     Regardless of the context, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington*, 996 F.3d at 255.

37.     Here, Plaintiff's theory of liability is predicated on OptumRx's alleged failure to implement a specific formulary, specific opioid utilization limits, or restrictions different from those mandated by the OptumRx's VHA contract.

38.     Based on Plaintiff's allegations, OptumRx cannot simultaneously comply with its obligations under its VHA contract and comply with New York law, making a federal contractor immunity defense colorable.

## IV.     VENUE

39.     Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the Supreme Court of the State of New York, Westchester County, the court from which removal is sought.  *See* 28 U.S.C. § 1442(a) ("A civil action … that is commenced in a State court … may be removed … to the district court of the United States for the district and division embracing the place wherein it is pending.").

## V.     REMOVAL PROCEDURES

40.     The federal-officer-removal statute does not require all Defendants to consent to

removal. *See, e.g., Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) ("[I]t is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court."); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("Whereas all defendants must consent to removal under section 1441, a federal officer or agency defendant can unilaterally remove a case under section 1442.") (citations omitted).

41.     In compliance with 28 U.S.C. § 1446(a) and the rules of this Court, true and correct copies of process, pleadings and orders served on OptumRx are attached as **Exhibit A.**

42.     Promptly after filing this Notice of Removal, OptumRx will give written notice to Plaintiff, who is the only adverse party, and will file a notice with the Clerk of the Supreme Court of the State of New York, Westchester County, pursuant to 28 U.S.C. § 1446(d).

## VI.     REMOVAL IS TIMELY

43.     "[A] notice of removal may be filed within 30 days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

44.     OptumRx was first served with the Amended Supplemental Short Form Complaint on June 14, 2023.

45.     This notice of removal, filed on July 14, 2023, is therefore timely filed under 28 U.S.C. § 1446(b)(3).

## VII.     SUPPLEMENTAL JURISDICTION

46.     In accordance with 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all of the Plaintiff's claims in this action. The Plaintiff's claims that do not give rise to federal officer removal "form part of the same case or controversy." *See* 28 U.S.C. § 1367(a).

## VIII.  NO WAIVER

47.     By filing this Notice of Removal, OptumRx does not waive, either expressly or

impliedly, its right to assert any defense it could have asserted in the Supreme Court of the State of New York, Westchester County. OptumRx reserves the right to amend or supplement this Notice of Removal.

## IX.    CONCLUSION

OptumRx gives notice that the state court action pending in the Supreme Court of the State of New York, Westchester County, is removed to the United States District Court for the Southern District of New York.

DATED this July 14, 2023.

/s/ Steven Penaro
Steven L. Penaro
New York Bar No. 4765046
David Venderbush
New York Bar No. 2920817
Karl Geercken
New York Bar No. 2536662
Reade Seligmann
New York Bar No. 5346929
**ALSTON & BIRD LLP**
90 Park Ave
New York, NY 10016
Tel: (212) 210-9460
steve.penaro@alston.com
david.venderbush@alston.com
karl.geercken@alston.com
reade.seligmann@alston.com

***Counsel for OptumRx, Inc.***