UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
WESTCHESTER COUNTY, *et al.*,

                                        Plaintiffs,

        - against -

MYLAN PHARMACEUTICALS, INC., *et al.*,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-6096 (CS)

<u>Appearances</u>:

Hunter J. Shkolnik
Paul J. Napoli
NS PR Law Services, LLC
Santurce, Puerto Rico

Salvatore C. Badala
Shayna E. Sacks
Napoli Shkolnik PLLC
Melville, New York
*Counsel for Plaintiffs*

Ellison Ward Merkel
Haley Plourde-Cole
Quinn Emanuel Urquhart & Sullivan, LLP
New York, New York

Michael Lyle
Jonathan Cooper
Quinn Emanuel Urquhart & Sullivan, LLP
Washington, D.C.

Charles B. Straut II
Quinn Emanuel Urquhart & Sullivan, LLP
San Francisco, California
*Counsel for Defendant Express Scripts, Inc.*

Michael R. Hoernlein
Brian D. Boone
Emily McGowan
Alston & Bird LLP
Charlotte, North Carolina

Caroline Rawls Strumph
Alston & Bird LLP
Atlanta, Georgia
*Counsel for Defendant OptumRx, Inc.*

Seibel, J.

Before the Court is Plaintiffs' motion to remand.  (*See* ECF No. 114.)  For the following reasons, the motion is GRANTED.

## I.    **BACKGROUND**

"The following facts derive principally from the complaint, the notice of removal, and the briefing on the instant motion seeking remand."  *Ohno Enters. v. Allen*, No. 15-CV-6675, 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016); *see Pondexter v. Oruzio*, No. 15-CV-5617, 2017 WL 1079974, at *1 (E.D.N.Y. Mar. 21, 2017) ("When determining subject matter jurisdiction, courts may look outside the pleadings to documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.  The following facts are therefore drawn from the documents attached to the notice of removal and the motion to remand in this case as well as the evidence presented in the parties' supplemental filings.").[1]

Plaintiffs are thirty-four New York counties and municipalities, including towns and cities, all of which initiated the underlying actions in state courts throughout New York from September 2017 to February 2020.  (*See* ECF No. 116-2.)  Those actions – and others – were consolidated into New York State's *In re Opioid Litigation*, Index No. 400000/2017, which the

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

New York State Litigation Coordinating Panel ("LCP") established in Suffolk County Supreme

Court in July 2017 to coordinate the state's large volume of opioid-related lawsuits.  (*See* ECF

No. 37 ¶¶ 7-8; ECF No. 121 ("Ds' Opp.") at 2.)  Several of the *In re Opioid Litigation* cases

were designated as "Track I Cases" and proceeded to trial, resulting in a verdict against certain

defendants on December 30, 2021.  (ECF No. 37 ¶ 9; Ds' Opp. at 2.)  The remaining cases –

including the 34 cases to which the instant motion is addressed – were then transferred to

Westchester County Supreme Court under the caption *In re Opioid Litigation – Non-Track I*

*Cases*, Index No. 75000/2022, where they have been assigned to Justice Nancy Quinn Koba.

(Ds' Opp. at 3; *see* ECF No. 115 ("Ps' Mem.") at 1-2; ECF No. 37 ¶¶ 10-11.)

On April 7, 2023, Plaintiffs amended their respective complaints to name pharmacy

benefit managers ("PBMs") Express Scripts, Inc. and OptumRx, Inc. as new Defendants, among

others.  (*See* ECF No. 116-4 ¶ 4.)[2]  These complaints contain seven state law claims:  (1)

deceptive acts and practices in violation of New York General Business Law ("NY GBL")

§ 349; (2) false advertising in violation of NY GBL § 350; (3) public nuisance; (4) violation of

New York Social Services Law § 145-B; (5) fraud; (6) unjust enrichment; and (7) negligence.

(*Id.* ¶¶ 529-636.)

On July 14, 2023, Defendant OptumRx, Inc. ("OptumRx"), removed the first of these 34

cases to this Court, (*see* ECF Nos. 1, 116-2), contending that its provision of pharmacy benefit

management services pursuant to contracts with federal agencies, including the Veterans Health

Administration ("VHA"), satisfies the federal officer removal statute, 28 U.S.C. § 1442(a),

---

[2] PBMs are entities which "function as intermediaries between insurance providers and pharmaceutical manufacturers," handling negotiations and payments within the prescription drug supply chain while playing no direct role in the physical distribution of those drugs.  *Pharmacy Benefit Managers*, Nat'l Ass'n of Ins. Comm'rs, https://content.naic.org/cipr-topics/pharmacy-benefit-managers (last visited May 28, 2024).

because Plaintiffs' allegations implicate its provision of services at the direction of the federal government, (*see* ECF No. 1 ¶¶ 1-5, 30).[3]  On July 28, 2023, Defendant Express Scripts, Inc. ("Express Scripts" and together with OptumRx, the "Removing Defendants"), filed a supplemental notice of removal, contending that its contract with the United States Department of Defense ("DOD") to provide various services to DOD's TRICARE healthcare program for active duty service members and veteran retirees, as well as its participation in the Federal Employees Health Benefits Program ("FEHBP"), administered by the United Sates Office of

---

[3] The remaining cases were all removed to this Court between July 14, 2023 and July 17, 2023.  (*See* ECF No. 116-2.)  On July 20, 2023, the Court entered an Order consolidating all thirty-four cases for pretrial purposes only and designating *Westchester County v. Mylan Pharmaceuticals, Inc., et al.*, No. 23-CV-6096, as the lead case.  (*See* ECF No. 15.)  The thirty three related cases are:  *Cattaraugus County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06103; *Cayuga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06106; *Chautauqua County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06108; *Chemung County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06109; *Chenango County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06120; *City of Ithaca, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06115; *City Of Kingston, NY v. Novartis, et al.*, No. 23-CV-06126; *City of Mount Vernon, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06136; *Clinton County, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06113; *Cortland County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06121; *Essex County v. Mylan Pharmaceuticals, Inc. et al.* ,No. 23-CV-06097; *Franklin County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06125; *Genesee County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06128; *Hamilton County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06129; *Livingston County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06132; *Niagara County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06104; *Orleans County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06110; *Otsego County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06112; *Putnam County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06116; *Rensselaer County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06117; *Saratoga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06119; *Schoharie County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06123; *Schuyler County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06127; *Steuben County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06107; *Tioga County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06098; *Tompkins County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06114; *Town of Lancaster, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06130; *Town of Amherst, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06118; *Town of Cheektowaga, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06124; *Warren County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06133; *Yates County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06134; *Town of Tonawanda, NY v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06131; and *Madison County v. Mylan Pharmaceuticals, Inc. et al.*, No. 23-CV-06135.

Personnel Management ("OPM"), independently satisfy the requirements for federal officer

removal under § 1442(a).  (*See generally* ECF No. 37.)

On August 3, 2023, Plaintiffs filed a pre-motion letter in anticipation of a motion to

remand, (*see* ECF No. 44), and on August 30, 2023, the Court held a pre-motion conference at

which it granted Plaintiffs leave to amend their complaints and set a briefing schedule for the

motion, (*see* Minute Entry dated Aug. 30, 2023).

Plaintiffs' amended complaints were filed on September 29, 2023 and contain several

paragraphs by which Plaintiffs seek to disclaim and abandon any and all claims which may give

rise to § 1442(a) jurisdiction.  (*See generally* ECF No. 105 ("Sept. 2023 Compl.").)[4]

Specifically, Plaintiffs offer the following disclaimers:

> [T]his lawsuit relates to Defendants' unlawful conduct that has created,
> perpetuated, contributed to, and maintained, a serious public health crisis of
> opioid abuse, addiction, morbidity, and mortality throughout New York state.
> The Defendants must be held accountable to abate the nuisances they have caused
> in communities across the state.  This lawsuit does not seek damages related to
> the federal government or for conduct undertaken pursuant to contracts with the
> federal government, nor does it challenge the creation of custom formularies for,
> or on behalf of, a federal government agency or federal officer, such as for any
> Federal Employees Health Benefit Act ("FEHBA"), TRICARE-governed health
> benefits plan or any other federal plan.  Furthermore, it does not seek to recover
> moneys paid by the federal government pursuant to such plans.  As such, the
> Complaint does not seek relief from any PBM Defendant that is available
> pursuant to any claim(s) involving a federal government agency, federal officer or
> federal government contracting officer associated with any FEHBA or
> TRICARE-governed health benefits plan or federal health insurance program; nor
> pharmacy care services provided to the federal government; nor remedies that
> would interfere with or otherwise affect any federal plan, including but not
> limited to any remedies that would interfere with or affect the formularies,

---

[4] ECF No. 105 was sealed at Plaintiffs' request, (*see* ECF No. 106), to allow the parties to
determine if it contained any confidential information subject to a protective order, (*see* ECF No.
107).  Plaintiffs were ordered to file redacted versions of that document and the amended
complaints in the related cases "as soon as practicable," (*id.*), but do not appear to have done so,
(*See* ECF No. 116-1.  As such, the Court shall unseal ECF No. 105 and the other amended
complaints unless Plaintiffs advise the Court that they do in fact contain confidential information
and file redacted versions of those documents no later than July 2, 2024.

utilization management policies and programs, or administration of any Federal Plan; the uniform administration of the TRICARE program or the provision of healthcare services to U.S. military servicemembers, veterans, and their beneficiaries; or services provided under a contract that requires the exclusive use of any federal government formulary, including the Department of Defense's Uniform Formulary, that specifies the drugs authorized, sets requirements for prior authorization and utilization reviews, and/or assures medical necessity, clinical appropriateness and/or cost-effectiveness, and/or establishes a prescription restriction program for TRICARE federal health insurance program members and/or beneficiaries.

This lawsuit does not contain claims against the Defendants that are federal in character related to prescriptions adjudicated or processed under any federal program or federal contract, including OptumRx's contract with the Veterans Health Administration or pharmacy care services provided to the federal government, Express Script's contracts with the U.S. Department of Defense, the TRICARE health care program, and other health plans participating in the FEHBP overseen or administered by the federal government; nor does it include requests for relief governed by, or available pursuant to claims associated with any FEHBP or TRICARE-governed health benefits plan; nor claims against Defendants involving beneficiaries under federal healthcare programs or federal plans; nor federal prescription claims adjudicated or processed for plans controlled or sponsored by federal government agencies or entities or those processed according to a federal formulary design or Medicare Part D plans; nor conduct as a fiscal intermediary on behalf of the federal government; nor conduct governed or managed by a federal officer or federal government contracting offer [*sic*], or basic governmental tasks fulfilled or carried out by a Defendant on behalf of the federal government; nor determinations as to the appropriateness of restrictions on a TRICARE member's prescriptions, which are to be determined by a federal officer; nor conduct considered to be undertaken by any defendant as a statutorily authorized *alter ego* of the federal government; nor any contract that provides and/or requires federal government subjection, guidance and/or control over a Defendant's performance and/or the prescription drugs included in formularies. Plaintiff further disclaims any claims herein regarding: (1) conduct related to prescription claims for federal plans that may or may not have caused an oversupply of prescription opioids or caused or contributed to the harms for which Plaintiff seeks recovery, (2) Express Scripts' pharmacy benefits management or mail order pharmacy work for the Department of Defense under any TRICARE Contract and pertaining to health plans under FEHBA, including the operation of mail order pharmacies in accordance with contractual guidelines set by the federal government; and (3) OptumRx's work for the Veterans Health Administration and/or the federal government.

Plaintiff disavows any cause of action or claim for recovery related to opioids distributed to military personnel, veterans, federal customers or health plan beneficiaries under the authority or direction of a federal officer, federal agency, or pursuant to any federal contract; or any statutory mandate to provide health

care to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries through the TRICARE federal health insurance program; contracts pertaining to pharmacy benefit management and mail order pharmacy services for federal employees, including pertaining to the TRICARE Home Delivery/Mail Order Pharmacy, or programs such as Meds by Mail; or federal contracts where a federal officer or agency directed or exercised guidance and control over Defendants' conduct as described generally in this lawsuit; the operation or management of a TRICARE mail order pharmacy; or federal contracts pertaining to dispensing by mail order pharmacies to beneficiaries of federal plans, military personnel or veterans and/or their beneficiaries; or prescription claims under a contract between Defendants and the federal government.

Plaintiff expressly disclaims and disavows any and all federal claims or questions related to opioids at issue in this lawsuit and disavows any cause of action or claim for recovery related to opioids at issue that could give rise to federal subject matter jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442(a)(1) (federal officer).  Plaintiff is not seeking relief for any and all claims for damages against any Defendant whose conduct whether by omission or commission, was engaged in at the behest of the United States or any agency or person acting under him or under color of such office to the extent that such a claim would implicate federal court jurisdiction under 28 U.S.C. § 1442(a)(1), predicated on preemption by the TRICARE statute and the FEHBA, or the government contactor's defense articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1998).  All such claims that legitimately implicate such defenses, in the unlikely event that they exist and are factually supported, are not asserted and are hereby expressly and preemptively disclaimed.  Plaintiff hereby puts any Defendant who may nonetheless assert such defenses as a basis for federal jurisdiction over this case on notice that Plaintiff seeks no recovery for injuries as a result of conduct that meets the three-prong *Boyle* test and constitutes actions of a federal officer sufficient to trigger jurisdiction under 28 U.S.C. § 1442(a)(1).  Plaintiff specifically advises all Defendants of their position that such an express, clear and unequivocal disclaiming of exposures and of claims implicating the *Boyle* defense, as well as any other claims that legitimately implicate 28 U.S.C. § 1442(a)(1), render any potential future removal of this case to federal court on one of these clearly-disclaimed bases objectively unreasonable under *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).

(Sept. 2023 Compl. ¶¶ 3-6; *see id.* ¶¶ 113-116.)[5]

---

[5] In addition to these express disclaimers, Plaintiffs also include similar language in other paragraphs throughout their amended complaints.  (*See, e.g.*, Sept. 2023 Compl. ¶ 52 ("Plaintiff does not allege claims related to military personnel, veterans, federal customers or federal health plan beneficiaries."); *id.* ¶ 106 (same); *id.* ¶ 505 ("Plaintiff does not allege claims related to OptumRx's work for the Veterans Health Administration, military personnel, veterans, federal

The instant motion followed.

## II.   <u>LEGAL STANDARD</u>

"[F]ederal courts are courts of limited jurisdiction," and "may not exercise jurisdiction absent a statutory basis." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *see Robinson v. Kotler*, No. 23-CV-10623, 2024 WL 839049, at *1 (S.D.N.Y. Feb. 28, 2024) ("[F]ederal courts are courts of limited jurisdiction, meaning that they can only hear certain types of cases permitted by law.").  One such basis is "[t]he federal-officer removal statute . . . [which] provides that a case may be removed from state to federal court when the case is brought against 'the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'" *Hicksville Water Dist. v. Jerry Spiegel Assocs., Inc.*, No. 19-CV-6070, 2020 WL 3129162, at *3 (E.D.N.Y. June 12, 2020) (quoting 28 U.S.C. § 1442(a)(1)).

A defendant that is not itself a federal officer "must satisfy a three-pronged test to determine whether it may effect removal on those grounds," under which it must "(1) show that it is a person within the meaning of the statute who acted under a federal officer, (2) show that it performed the actions for which it is being sued under color of federal office, and (3) raise a colorable federal defense." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 142-43 (2d Cir. 2023); *see Isaacson v. Dow Chem Co.*, 517 F.3d 129, 135 (2d Cir. 2008).

---

customers or federal health plan beneficiaries."); *id.* ¶ 1027 ("Plaintiff does not allege claims related to the PBM's work for or on behalf of the federal government, or that involving military personnel, veterans, federal customers or federal health plan beneficiaries."); *id.* ¶ 1130 (same).)

　　Citations to the Sept. 2023 Compl. refer to paragraphs in the "Addendum" section of that document, which begins at page 8 of the PDF as numbered by the Court's Electronic Case Filing System.  (*See generally* Sept. 2023 Compl.)

But "even if jurisdiction existed at the time of removal, the elimination of all federal claims after removal bears on the court's exercise of supplemental jurisdiction." *Paprarella v. Liddle & Robinson, L.L.P.*, No. 18-CV-9267, 2023 WL 2344725, at *4 (S.D.N.Y. Mar. 3, 2023); *see Meer Enters., LLC v. Kocak*, No. 18-CV-6, 2018 WL 1901478, at *3 (S.D.N.Y. Apr. 20, 2018) ("Courts in this Circuit have granted motions to remand where a plaintiff's federal claims have been withdrawn or dismissed before the start of discovery, or prior to the court's decision on a motion to dismiss.") (collecting cases).  In other words, "whether to retain a removed case after post-removal dismissal of all claims that made the case properly removable presents an entirely different issue than whether removal was proper in the first place," and thus "a properly removed case *can* be remanded to the state court after [a] complaint is amended to remove the allegations that made removal proper." *Frawley v. Gen. Elec. Co.*, No. 06-CV-15395, 2007 WL 656857, at *3 (S.D.N.Y. Mar. 1, 2007) (emphasis in original); *see Maguire v. A.C. & S., Inc.*, 73 F. Supp. 3d 323, 328 (S.D.N.Y. 2014) ("The later elimination of federal claims and defenses, so as to leave standing only state-law claims, may bear on whether the Court chooses to exercise supplemental jurisdiction, but it does not eliminate federal jurisdiction."); *Martincic v. A.O. Smith Corp.*, No. 20-CV-958, 2020 WL 5850317, at *4 (W.D. Pa. Oct. 1, 2020) ("[T]he propriety of a post-removal action either in the form of an express disclaimer or an amendment to a complaint removing allegations triggering federal liability is controlled by the discretionary principles of supplemental jurisdiction:  judicial economy, convenience, fairness, and comity.").[6]

---

[6] The Removing Defendants argue that a motion to remand is evaluated on the basis of the allegations as pleaded at the time of removal and may not be affected by post-removal amendments.  (*See* Ds' Opp. at 3-5.)  They are correct that the propriety of removal in the first place generally is judged as of the time of removal, *see, e.g.*, *Mraz v. JPMorgan Chase Bank, N.A.*, No. 17-CV-6380, 2018 WL 2075427, at *4 (E.D.N.Y. May 3, 2018), but it is well settled that events post-removal may warrant remand even if the case was properly removed, *see, e.g.*,

III.   **DISCUSSION**

Plaintiffs argue that remand is appropriate because they have expressly disclaimed any claims arising from Defendants' conduct in connection with federal programs, plans, contracts, employees, and beneficiaries, and thus the Removing Defendants have not satisfied the elements necessary for federal officer removal and this Court should not exercise supplemental jurisdiction over their state law claims.  (*See generally* Ps' Mem.)  The Removing Defendants maintain that (1) Plaintiffs' post-removal amendments do not affect the propriety of removal, which was proper under the federal officer removal statute, (2) Plaintiffs' disclaimer is illusory, as Plaintiffs' complaints still reflect liability and damages theories that implicate the work that the Removing Defendants do at the behest of their federal clients, and (3) even if the disclaimers are viable, this Court should retain supplemental jurisdiction given the federal questions and federal defenses which permeate Plaintiffs' claims.  (*See generally* Ds' Opp.)

A.   **Plaintiffs' Disclaimers and Federal Officer Jurisdiction**

The Removing Defendants frame the instant motion as turning on the propriety of removal in the first instance, (Ds' Opp. at 3-5; *see id.* at 1 ("It is black-letter law that post-removal amendments do not affect the propriety of removal.")), and as a result, spend much of their opposition detailing the extent to which removal pursuant to 28 U.S.C. § 1442(a)(1) was proper, (*see id.* at 5-18).  But in so doing they largely speak past Plaintiffs' motion, the primary thrust of which is that a plaintiff may amend its complaint post-removal to eliminate the bases for federal officer jurisdiction and that, in such circumstances, a federal court should decline to

---

*Pelker v. Air & Liquid Sys. Corp.*, No. 17-CV-1107, 2018 WL 679642, at *8 (D. Or. Feb. 2, 2018) (noting that "post-removal developments may cause remand not only to be proper, but even to be required" and rejecting defendants' "argu[ment] that removability must be determined *at the time of removal*, and thus post-removal waivers have no effect.") (emphasis in original).

exercise supplemental jurisdiction over the remaining state law claims.  (*See* Ps' Mem. at 6-9, 22-25; ECF No. 128 ("Ps' Reply") at 1-4.)

As noted, Plaintiffs are correct that "a properly removed case *can* be remanded to the state court after the complaint is amended to remove the allegations that made removal proper," *Frawley*, 2007 WL 656857, at *3 (emphasis in original), and thus I focus not on whether removal was proper in the first instance, but on whether the disclaimers are effective, and if so, whether I should nevertheless exercise supplemental jurisdiction over these cases.

As a threshold matter, federal courts evaluating similar circumstances "have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based."  *Grady v. Monsanto Co.*, No. 23-CV-226, 2023 WL 4884468, at *2 (E.D. Mo. Aug. 1, 2023); *see id.* at *3 (collecting cases); *Maguire v. A.C. & S.*, No. 14-CV-7578, 2015 WL 4934445, at *2 (S.D.N.Y. Aug. 18, 2015) ("Courts have consistently held that . . . an explicit [post-removal] abandonment sufficiently excises the claims that led to removal on the grounds of a federal-contractor defense as to justify remand."); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 n.28 (5th Cir. 2015) (*per curiam*) ("Courts regularly recognize post-removal claim disclaimers in federal officer proceedings."); *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, No. 21-CV-29, 2021 WL 5194662, at *6 (S.D. Ohio Nov. 8, 2021) ("The bottom line is that case law suggests that post-removal claim disclaimers, or waivers, can give rise to remand.") (collecting cases); *O'Shea v. Asbestos Corp., Ltd.*, No. 19-CV-127, 2019 WL 12345572, at *9 (D.N.D. Dec. 13, 2019) ("Case law clearly supports the proposition that a waiver filed after removal may operate to eliminate the bases of federal officer jurisdiction and justify remand."), *report and recommendation adopted*, 2020 WL 9848714 (D.N.D. Jan. 8, 2020); *Dougherty v. A.O. Smith Corp.*, No. 13-CV-1972,

2014 WL 3542243, at *10 (D. Del. July 16, 2014) ("[F]ederal courts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based."), *report and recommendation adopted*, 2014 WL 4447293 (D. Del. Sept. 8, 2014); *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (to same effect) (collecting cases).[7]

For example, in *Maguire v. A.C. & S., Inc.* plaintiffs sought damages from several defendants in connection with personal injuries allegedly caused by asbestos exposure. *See* 2015 WL 4934445, at *1. Following one defendant's removal to federal court based on federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1), *id.*, plaintiffs were granted leave to amend their complaint and added a disclaimer: "No Claims Are Made for Asbestos Exposures Which Are Alleged to Have Occurred Aboard Any Military Vessel or Vehicle, on or at Any Shipyard or on or at Any Governmental Facility or Location," *id.* at *2. The *Maguire* court found that "such broad abandonment language [was] sufficient to constitute abandonment of claims subject to a federal contractor defense," and remanded because removal had been based on claims of exposure at government sites, but with all such claims "removed from the scope of the Amended Complaint, [defendant's] basis for asserting federal jurisdiction has been eliminated." *Id.* at *4.

Similarly, the court in *Frawley v. Gen. Elec. Co.* granted a motion to remand when Plaintiffs amended their complaint post-removal to delete allegations related to asbestos

---

[7] In contrast, the two cases on which the Removing Defendants primarily rely – *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), and *In re Nat'l Prescription Opiate Litig.*, No. 17-MD-2804, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023), (*see* Ds' Opp. at 1, 8-9, 14-18) – are inapposite, as neither assessed the propriety of remand in the context of express disclaimers of the sort at issue here, or otherwise mentioned disclaimers at all, *see, e.g.*, *People of the State of Cal. v. Eli Lilly & Co.*, No. 23-CV-1929, 2023 WL 4269750, at *5 n.4 (C.D. Cal. June 28, 2023) (rejecting similar argument concerning *Cnty. Bd. of Arlington Cnty.* because "that decision is distinguishable, at least in part, because it did not involve an express disclaimer, such as Plaintiff's here.").

exposure from employment on United States Navy ships. *See* 2007 WL 656857, at *1-2. In so

doing, the *Frawley* court accepted Plaintiffs' argument that the court should not exercise

supplemental jurisdiction over the remaining claims in the amended complaint which "arise

entirely under state law, and in which there is allegedly no federal interest, due to the

abandonment of any and all claims against [defendant] arising out of the plaintiff's naval

experience." *Id.* at *3.

The *Maguire* and *Frawley* decisions demonstrate that post-removal "disclaimers which

explicitly renounce[] claims of a specific nature [are] sufficient to warrant remand . . . where the

removal was based on the federal officer removal statute," *Batchelor*, 185 F. Supp. 3d at 1364,

because such disclaimers preclude defendants from "assert[ing] a colorable federal defense based

on government contractor immunity [as] such a defense pertains to claims that simply do not

exist," *id.* at 1364-65; *see Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *8 ("If a

disclaimer is sufficiently clear and specific that, on remand, the state court would not be left to

determine whether an action was taken on behalf of an officer of the United States and under

color of office, then the disclaimer is effective."); *O'Shea*, 2019 WL 12345572, at *11 (where

"plaintiffs' notices of waiver suffice to eliminate the factual allegations giving rise to

[defendant's] federal officer defense . . . the motions to remand should be granted"); *Kelleher v.*

*A.W. Chesterton Co.*, No. 15-CV-893, 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015)

("Plaintiff's waiver has rendered any federal defenses moot. To deny remand of this case would

affirm [defendant's] right to assert a defense against a claim that does not exist. Indeed, in

many . . . cases involving claims originally subject to a federal-contractor defense, remand has

been held appropriate following similar waivers.") (collecting cases).

Here the disclaimers offered by Plaintiffs are sufficiently specific.  They explicitly renounce any claims or recovery related to the Removing Defendants' services, conduct, and contracts in connection with TRICARE, the FEHBA, the VHA or any other federal program, (*see* Sept. 2023 Compl. ¶¶ 3-6) – *i.e.*, they abandon any claims or recovery arising out of the Removing Defendants' work on behalf of any federal entity, including those identified in their respective notices of removal, (*see* ECF No. 1 ¶ 1 ("OptumRx is a contractor with the federal government.  OptumRx contracts with federal agencies and entities to provide pharmacy benefit management services across the country, including to [VHA] health-plan members . . . .  Plaintiff challenges conduct under that federal contract . . . ."); *id.* ¶ 3 ("Plaintiff challenges opioid prescriptions adjudicated or processed under federal contracts like the VHA contract."); ECF No. 37 ¶ 5 ("For both TRICARE and FEHBP, Express Scripts is acting under a federal officer; the alleged conduct relates to an act under color of office; and Express Scripts has colorable federal defenses, including the government contractor defense . . . .  It is therefore entitled to remove these cases under the federal officer removal statute.")).

The Removing Defendants nevertheless argue that the disclaimers are "ineffective and illusory" because the nuisance injury alleged by Plaintiffs is "indivisible," as Plaintiffs purportedly "allege the aggregate impact of *all* opioid prescriptions in their jurisdictions constitute a single public nuisance," (Ds' Opp. at 19 (emphasis in original)), "seek to hold the [Removing Defendants] jointly and severally liable for all damages caused by the opioid crisis," (*id.* at 20), and will be unable to separate damages related to commercial health plans from those related to federal plans, (*see id.* at 20-21).

But nearly identical indivisibility arguments have already been rejected by multiple courts, including in *People of the State of Cal. v. Eli Lilly & Co.*, a case alleging that PBMs

conspired with insulin manufacturers to artificially raise the price of insulin in California.  *See*

2023 WL 4269750, at *1.  That court explained:

> [The removing defendant's] indivisibility argument stretches federal officer
> jurisdiction too far.  A number of courts [in cases involving asbestos exposure]
> have credited similar types of waivers that seek to disclaim work performed on
> behalf of government officers while suing private contractors for work performed
> on behalf of private organizations.  At oral argument, [the removing defendant]
> argued that th[ose] asbestos cases presented meaningfully different facts than
> those the Court is faced with in the present Motion.  Specifically, [the removing
> defendant] argued that work performed on specific vessels could be divided in a
> way that joint negotiations on behalf of multiple parties could not.  While such a
> division may be more difficult here, the Court is not persuaded that it cannot be
> done.  Furthermore, [the removing defendant's] argument, when carried to its
> logical end, assumes that any organization that contracts with the government,
> including for services that are also available to private organizations, may always
> take advantage of federal officer removal if any portion of the work it performs is
> on behalf of both private and government organizations, even if the government
> services are not at issue.  Yet [the removing defendant] has not provided authority
> for this proposition, nor has the Court found any such authority, especially under
> circumstances similar to the present case, where Plaintiff has repeatedly
> demonstrated that it does not seek to sue over any conduct performed on behalf of
> a federal entity.  Therefore, the Court rejects the Removing Defendants' factual
> indivisibility arguments.

*Id.* at *6; *see Gov't of Puerto Rico v. Eli Lilly & Co.*, No. 23-CV-1127, 2023 WL 4830569, at *2

(D.P.R. July 13, 2023) (rejecting indivisibility argument "because relief would be strictly limited

to non-federal health insurance plans," and "[t]hus, upon remand, the state court would not need

to address any issue related to Defendants' contracts with the federal government nor would

Defendants have any colorable federal defense because the claims asserted do not involve federal

programs or federal actors," and because "the Court [was] not persuaded that dividing the work

done by Defendants on behalf of the federal government from the work done for its private

clients [was] not possible in th[e] case"); *Ohio ex. rel. Yost v. Ascent Health Servs. LLC*, No. 23-

CV-1450, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024) (same).

The Court is similarly "not persuaded that dividing the work done by Defendants on

behalf of the federal government from the work done for [other] clients is not possible in this

case," *Gov't of Puerto Rico*, 2023 WL 4830569, at *2, particularly given the significant number of "courts [which] have credited similar types of waivers that seek to disclaim work performed on behalf of [federal] government officers while suing private contractors for work performed on behalf of private organizations," *People of the State of Cal.*, 2023 WL 4269750, at *6; *see Maguire*, 2015 WL 4934445, at *2 n.2 (collecting cases).  If, as the Removing Defendants predict, it proves impossible to disaggregate the harm from opioids distributed under federal programs from the harm from other opioids, that will redound to Plaintiffs' detriment, as I am confident that the state court will enforce Plaintiffs' disclaimer.  But speculation that Plaintiffs have made a decision that will make their damages harder (or even impossible) to prove is no reason to disregard their disclaimer.  And this Court is hardly in a position, in adjudicating a motion to remand in a case that has barely gotten off the ground with respect to the PBMs, to make decisions about what damages calculations may or may not be able to be made much further down the road.[8]

At bottom, "Plaintiffs' post-removal claim disclaimer is substantially similar . . . to the disclaimers that were determined to be effective in the cases discussed above," *Dougherty*, 2014 WL 3542243, at *16, and thus they have "effectively waived the claims that would provide the basis for § 1442(a)(1) jurisdiction," *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at

---

[8] On a similar note, the Removing Defendants submitted a Corrected Notice of Removal filed in another opioid case involving a federal disclaimer, *Jefferson County v. Williams et al.*, No. 20JE-CC00029 (Twenty-Third Judicial Circuit, Missouri), in which they argue that the plaintiff's expert reports filed in that case reflect theories of liability that encompass the PBMs' work for federal agencies, thus showing that disclaimers of the sort offered by Plaintiffs are unworkable, (*see* ECF No. 129).  The Court will not assume that Plaintiffs will not be able to isolate the Removing Defendants' work for federal healthcare plans in their damages calculations, and therefore disregard their disclaimer, on the basis of expert reports submitted by a different plaintiff, represented by different counsel, in a case that is in a very different procedural posture.

*9; *see id.* at *6 ("[T]he [disclaimer] . . . unequivocally evinces [plaintiff's] intent not to pursue

the issue of FEHBA-plans in this litigation.  Thus, the statement suffices to waive these claims,

even if they were originally included in the Complaint."); *Ohio ex. rel. Yost*, 2024 WL 23187, at

*3 (finding post-removal disclaimer effective where it "clearly identifies that [Plaintiff] does not

challenge conduct related to TRICARE or FEHB" and "[t]hus . . . provides a discrete and readily

identifiable category of claims it disclaims, and therefore remand would not require the state

court to consider the contours of the federal officer removal statute"); *People of the State of Cal.*,

2023 WL 4269760, at *7 ("Plaintiff's disclaimer, and later repeated waivers, negate any causal

nexus that might otherwise have existed between Plaintiff's claims and the Removing

Defendants' conduct on behalf of government officers.").  Put simply, Plaintiffs' disclaimers are

effective.[9]

## B.   <u>Supplemental Jurisdiction</u>

Having determined that Plaintiffs' post-removal disclaimers effectively waive any claims

or recovery attributable to the Removing Defendants' conduct related to, or contracts with,

federal officers, the Court must determine whether to exercise supplemental jurisdiction over the

state law claims in Plaintiffs' amended complaints.[10]

---

[9] The Court thus need not address whether these cases were originally removable under 28 U.S.C. § 1442(a)(1).  *See Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *5 ("[T]he Court need not decide whether the inclusion of one or more [benefit claims] arising from a FEHBA-plan would make the case removable under § 1442(a)(1).  That is because the Court finds that, to the extent any such claims were ever part of this action, [plaintiff] has waived those claims in connection with its action here.").

[10] At least one other court "agrees . . . that a district court has discretion in determining whether to remand a case after the claims giving rise to § 1442(a)(1) jurisdiction are eliminated" but "respectfully disagrees . . . that this decision should proceed as a 28 U.S.C. § 1367 supplemental jurisdiction analysis," and instead applied a "§ 1442(a)(1) ancillary-claim analysis" when "determin[ing] whether to adjudicate the remaining claims."  *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *9 n.5.  I need not resolve that dispute, because "although the

The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. *See Maguire*, 2015 4934445, at \*4 n.4; *Dougherty*, 2014 WL 3542243, at \*16. "Whether to exercise supplemental jurisdiction under § 1367 is within the sound discretion of the district court. Courts consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity to decide whether to exercise supplemental jurisdiction." *Camara v. Kenner*, No. 16-CV-7078, 2018 WL 1596195, at \*6 (S.D.N.Y. Mar. 29, 2018); *see Frawley*, 2007 WL 656857, at \*3.

Here, "[f]actors of judicial economy and convenience clearly militate in favor of remanding th[ese] cases to the New York Supreme Court," *Frawley*, 2007 WL 656857, at \*4, where dozens of similar opioid lawsuits were filed and consolidated into the state's *In re Opioid Litigation* by the LCP, where a bellwether trial resulted in a verdict against certain defendants on December 30, 2021, and where other similar coordinated cases are still pending before Justice Koba under the caption *In re Opioid Litigation – Non-Track I Cases*, Index No. 75000/2022.[11] Given those extensive efforts to coordinate and litigate New York state's opioid cases, the state court "is fully familiar with all the issues that [may] arise . . . whereas this court will have a rather steep learning curve." *Frawley*, 2007 WL 656857, at \*4; *see Gorfinkel v. Vayntrub*, No. 13-CV-3093, 2014 WL 4175914, at \*7 (E.D.N.Y. Aug. 20, 2014) (declining to exercise

---

§ 1442(a)(1) ancillary-claim analysis and the § 1367 supplemental jurisdiction analysis rest on different statutory foundations, the two tests are essentially identical in practice," *id.*, and therefore this Court will employ the § 1367 supplemental jurisdiction framework used by the courts in *Frawley*, 2007 WL 656857, at \*4 and *Maguire*, 2015 WL 4934445, at \*4-5.

[11] Based on the Court's review, there are at least six such cases: *City of Plattsburgh v. Purdue Pharma L.P., et al.*, Index No. 75031/2022; *City of Albany v. Purdue Pharma L.P., et al.*, Index No. 75032/2022; *City of Schenectady v. Purdue Pharma L.P., et al.*, Index No. 75033/2022; *City of Troy v. Purdue Pharma L.P., et al.*, Index No. 75034/2022; *City of Yonkers v. Purdue Pharma L.P., et al.*, Index No. 75045/2022; and *County of Yates v. Akin's Pharmacy, et al.*, Index No. 75061/2022.

supplemental jurisdiction because "the State court is most familiar with Plaintiff's causes of action, and is the original forum of Plaintiff's choosing.").

Next, considerations of "[c]omity and respect for New York state courts dictate that where possible, state courts should decide matters of state law, and that absent exceptional circumstances, this Court should decline to exercise supplemental jurisdiction over such claims." *Wilson v. Dantas*, No. 12-CV-3238, 2013 WL 92999, at *9 (S.D.N.Y. Jan. 7, 2013).  As Plaintiffs are only pursuing state law causes of action, the comity factor favors remand as well. *See Chin Tuan v. Flatrate Moving Network LLC*, No. 19-CV-4264, 2020 WL 4606318, at *7 (S.D.N.Y. Aug. 11, 2020) ("[T]he interests of comity militate in favor of remand because the case is predominantly a matter of state law."); *Healthcare Venture Partners, LLC*, 2021 WL 5194662, at *10 (holding that comity factor weighs in favor of remand because "[plaintiff] has alleged eight separate causes of action under . . . state law" and "[c]omity suggests that a[] [state] court, not the federal court, would be better positioned to adjudicate those claims.").

Finally, the fairness factor favors remand as "[r]emand[] . . . at this early stage of the proceeding – far from trial and before substantial discovery has begun – does not create substantial unfairness or inconvenience to the parties."  *Wilson*, 2013 WL 92999, at *9; *see Gonzalez v. Red. Apple Grp., Inc.*, No. 21-CV-508, 2022 WL 987425, at *3 (E.D.N.Y. Feb. 5, 2022) ("The earlier the stage at which the federal claims are eliminated, the more the factors of judicial economy, convenience, fairness and comity weigh towards remanding the matter to the state court from which it was removed."); *Hassan, D.D.S. , PLC v. Miamee, D.D.S., P.C.*, No. 20-CV-488, 2020 WL 9347966, at *2 (E.D. Va. June 1, 2020) ("As to fairness, because the proceedings are at such an early stage, no party . . . would be prejudiced by remand.").

In sum, all four factors favor remand. *See Spehar v. Fuchs*, No. 02-CV-9352, 2003 WL 23353308, at *10 (S.D.N.Y June 17, 2003) (declining to exercise supplemental jurisdiction because "when a post-removal amendment leaves a federal court with only state law claims, and where the federal court has had no substantive involvement in the case, the values of judicial economy, convenience, fairness, and comity weigh in favor of remanding to state court.").[12] Accordingly, the Court declines to exercise supplemental jurisdiction.

_____

[12] The Removing Defendants argue that the Court should nevertheless exercise supplemental jurisdiction because (1) "resolving this case will require addressing substantial questions of federal law," including Defendants' duties under the Controlled Substances Act ("CSA"), (*see* Sept. 2023 Compl. ¶¶ 773-776, 827-829, 947, 971, 1234, 1275, 1278, 1302, 1307), which Plaintiffs' counsel purportedly "recognize," having recently filed a separate opioid case for different plaintiffs "against many of the same defendants" in federal court in Florida, (Ds' Opp. at 23), (2) Removing Defendants have "have significant federal defenses, including federal preemption under the Employee Retirement Income Security Act of 1974," ("ERISA"), (*id.*), and (3) Plaintiffs' counsel purportedly selected a similar case, not before this court, as a "PBM bellwether[]" in the federal opioid Multi-District Litigation ("MDL"), "further confirming that these cases raise federal questions and belong in federal court," (*id.* at 24).

The Removing Defendants' arguments regarding the CSA and ERISA essentially present new grounds for removal – federal question jurisdiction and complete preemption. While a defendant "may . . . amend its notice of removal after thirty days if the amendment is merely technical," it "may not amend a notice of removal after thirty days to state a new ground for removal," *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078, 2014 WL 123488, at *13 (E.D.N.Y. Jan. 10, 2014); *see* 28 U.S.C. § 1446, let alone raise new grounds for removal for the first time in an opposition brief to a motion to remand, *see, e.g.*, *Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio 2008) ("These bases [for removal] were raised for the first time in Defendants' opposition to the motion to remand. A defendant cannot argue a new substantive ground as a basis for removal in opposing remand."); *Warner v. Midnight Recovery*, No. 19-CV-453, 2020 WL 1105111, at *4 (W.D. Ky. Mar. 6, 2020) ("If a defendant fails to raise a substantive ground for removal in its notice of removal or does not file an amendment raising that issue within thirty days, that basis for removal is waived."); *PMC, Inc. v. Tomco Constr., Inc.*, No. 21-CV-13470, 2021 WL 5413988, at *4 (D.N.J. Nov. 18, 2021) ("[A] defendant may not add an entirely new basis for this Court's removal jurisdiction by raising it only in an opposition brief filed more than thirty days after removal."); *see also Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 924-25 (S.D.N.Y. 1995) (explaining that a "notice of removal generally must be filed within thirty days after the receipt of the initial state court pleading" and "[a] defendant may not amend its notice of removal after this thirty-day period to remedy a substantive defect in the petition" and holding that because defendant "did not assert its federal question basis for removal in its notice of removal in any way," the "Court cannot now,

**C.**   **Removing Defendants' Stay Request**

The Removing Defendants request that this Court stay execution of any remand order for at least thirty days to preserve their right to appeal and then maintain that stay should they choose to appeal.  (Ds' Opp. at 24.)

"But a stay [pending appeal] is not a matter of right, even if irreparable injury might otherwise result; rather, a stay is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion."  *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020); s*ee Leroy v. Hume*, 563 F. Supp. 3d 22, 25 (E.D.N.Y. 2021).  A court considers four factors to determine if that burden has been met:  "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Removing Defendants have developed virtually no argument addressing any of these factors, let alone demonstrated that a stay pending appeal is warranted in these circumstances.[13]

---

six months after the filing of the notice of removal and more than seven months after the filing of the complaint, permit it to add this new substantive ground for removal").  The Court thus disregards arguments presenting new grounds for removal.

To the extent the Removing Defendants rely on Plaintiffs' counsel having filed in federal court for other clients or having designated a similar case as a bellwether in the MDL, those strategic decisions, made for other clients in other contexts and plausibly based on any number of reasons, are far too thin a reed to support retention of jurisdiction in the face of considerations of judicial economy, convenience, fairness and comity.

[13] The case on which the Removing Defendants primarily rely in support of their stay request, *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), is hardly dispositive, as "the sole question before th[e] Court" in that case was "whether a district court must stay its proceedings while [an] interlocutory appeal on arbitrability is ongoing," *id.* at 740.  In any event, "Defendants right to appeal is rendered nugatory only if the state court reaches the merits of plaintiffs' claims

Simply requesting a stay is insufficient, as "[t]he Court is not responsible for developing arguments on a party's behalf or addressing conclusory claims." *Chui v. American Yuexianggui of Li LLC*, No. 18-CV-5091, 2021 WL 4482656, at *3 (E.D.N.Y. July 26, 2021), *report and recommendation adopted*, 2021 WL 4480736 (E.D.N.Y. Sept. 30, 2021); *see Spectrum Ne., LLC v. City of Rochester*, No. 21-CV-6453, 2022 WL 787964, at *4 (W.D.N.Y. Mar. 15, 2022) (declining to address party's contention where party did "no more than invoke a proposition," without "meaningfully explain[ing] its argument, cit[ing] any applicable legal authority, or apply[ing] said authority to the present dispute," as it "is not the Court's responsibility to develop the [defendant's] scattershot assertions into discernible legal arguments"); *Dahn v. Comm'r of Soc. Sec.*, No. 18-CV-1507, 2020 WL 5554510, at *2 (W.D.N.Y. Sept. 17, 2020) ("Because it is not the Court's responsibility to develop arguments on a party's behalf, the Court declines to address any such conclusory claims, and instead confines its analysis to those arguments that [Plaintiff] has meaningfully briefed.").

Accordingly, the request for a stay pending appeal is denied.[14]

_____

before the Second Circuit, on appeal, holds that I improperly remanded plaintiffs' case." *Leroy*, 563 F. Supp. 3d at 30. Given the complexity and early stage of the cases to be remanded, it is virtually impossible that the state court proceedings will terminate before an appeal of this decision is decided.

[14] This outcome should come as no surprise, as the failure to develop the argument for a stay has resulted in denials in other cases involving one of the Removing Defendants. *See Gov't of Puerto Rico*, 2023 WL 4830569, at *3 ("Express Scripts requests that the Court delay the mailing of the remand order to the state court by seven days. Express Scripts provides no legal basis for this request. The request is hereby DENIED."); *Cal. by and through Harrison v. Express Scripts, Inc.*, No. 23-CV-8570, 2024 WL 841197, at *6 (C.D. Cal. Feb. 28, 2024) ("[T]he Court concludes a stay is not warranted here. [Removing] Defendants have not made a strong showing that they are likely to succeed on the merits, for the same reasons [the Court is granting the motion to remand]. Nor have the [Removing] Defendants addressed any possible hardship in their moving papers.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF No. 114, 125),[15] docket this Order in this case and the thirty-three related cases (listed in footnote 3), and remand all of these cases to the Supreme Court of the State of New York, Westchester County.

**SO ORDERED.**

Dated: June 18, 2024
           White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[15] ECF No. 125 is a request for oral argument, which the Court does not find necessary.